## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JANICE YOST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 08-3112 |
| | ) | |
| MEMORIAL MEDICAL CENTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on the Defendant's motion for summary judgment [d/e 18].  Because the Plaintiff has not filed a response, the Defendant's motion is ALLOWED.

Plaintiff Janice Yost alleges that she lost her employment at Defendant Memorial Medical Center ("Memorial") on November 16, 2007 due to her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1).  Yost further claims that her demotion on October 7, 2007 was based on her age, in violation of the ADEA.  Memorial moves

for summary judgment on these claims.  The Plaintiff has not responded to Memorial's motion.[1]

## I. BACKGROUND

### (A)

Yost was born on November 19, 1948.  She was employed by Memorial, a hospital in Springfield, Illinois, from August 2, 1976 to November 16, 2007.  At all relevant times, Yost worked in Memorial's Call Center.  The function of the Call Center is to "triage" incoming, outgoing, and interoffice telephonic communications, and to connect the caller to the appropriate party or department.  The Call Center also serves as an answering service for the Southern Illinois University School of Medicine.

Prior to October 7, 2007, Yost had held the position of a Communications Team Leader for Memorial's Call Center since December 18, 2005.  Before being promoted to the Call Center Communications Team Leader position in December 2005, Yost held the position of a Communications Assistant II within the Call Center.  A comparison of the

---

[1]On October 8, 2009, the Plaintiff requested and received an extension to October 23, 2009, in which to file her response.  However, no response was filed.

2

job description of a Communications Assistant II and a Communications Team Leader reveals that the duties of both positions are largely identical, except that a Communication Team Leader "acts as a Call Center Lead Contact or resource person when a supervisor is not available" and is also expected to support Memorial personnel policies to co-workers by leading through example.

In 2005, Jennifer Vorreyer became the administrator with responsibility over the Memorial Call Center.  Vorreyer made certain observations of Yost's work and recorded those observations and the interactions between her and Yost.  In May 2007, Vorreyer instructed Yost to "be nice" to a caller when her tone was terse.  Vorreyer also observed Yost using an "angry" tone with a caller.  The same month, Vorreyer observed Yost continue a personal phone call while business callers remained "in queue," prompting Vorreyer to counsel Yost the next day.  Yost also gave Vorreyer a proposed work schedule that did not utilize the correct work shifts, which Vorreyer was not able to use.  On June 15, 2007, Vorreyer met with Yost and explained why she would not be selected for the manager

position.

On July 25, 2007, at approximately 11:15 a.m., Yost was on duty and seated at her work station within the Call Center.  Vorreyer walked in and observed Yost seated with her head bowed down and appearing to Vorreyer to be sleeping or dozing.  Yost did not respond to Vorreyer's e-mail which stated what she had observed.  Vorreyer believed this to be a serious workplace offense.  On August 1, 2007, Yost was issued a written warning for this misconduct and told that she would be terminated if it happened again.  Yost signed the "Record of Corrective Action" and expressed no disagreement with the warning.

On August 22, 2007, Vorreyer informed Yost that Memorial was no longer going to employ Communications Team Leaders as of October 1, 2007.  Yost believed that she was demoted for budgetary reasons.  Following the demotion of Yost and Jolene Elmore, Memorial did not employ a Communications Team leader in the Call Center.  Yost testified that the position was to her knowledge abolished at the time of her demotion.  The demotion became effective on October 7, 2007, and Yost's position was

changed from Communications Team Leader to Communication Assistant II.  Yost's rate of pay dropped from $14.85 to $13.51 per hour.

On November 13, 2007, Marjorie Carvalho was employed by Memorial as its Call Center Manager.  She became Yost's direct supervisor and reported to Vorreyer.  On November 16, at approximately 12:40 p.m., Yost was on duty and seated at her work station within Memorial's Call Center.  Two supervisors, Brandy Farley and JoAnn Stone, entered the Call Center in search of another employee.  Farley and Stone observed a woman in the Call Center who was leaning back in a chair so that her face was pointing toward the ceiling of the Call Center.  The woman's eyes were closed and her mouth was open, though she was not speaking.  Farley and Stone proceeded into the Call Center and found Carvalho seated within a work cubicle.  They advised Carvalho that a Call Center employee appeared to be asleep.  Carvalho proceeded to investigate and determined that the woman identified by Farley and Stone was Yost.  Carvalho approached Yost and said, "Jan."  Yost then sat up, opened her eyes and pressed the "busy" button on her telephone desk unit.

5

Carvalho immediately went to Vorreyer's office and advised Vorreyer of what Farley and Stone had reported to her and what Carvalho had just observed. Vorreyer informed Carvalho that Vorreyer had issued prior progressive discipline to Yost arising out of a prior incident of sleeping on the job. Vorreyer advised Carvalho that Vorreyer had no choice but to terminate Yost's employment.

Vorreyer then asked Carvalho to bring Yost to her office. The same day, at approximately 1:30 p.m., Yost was on duty and seated at her work station at the Call Center. Upon entering, Carvalho observed that Yost was once again lying back in her chair with her eyes closed. Carvalho called out Yost's name and touched Yost's shoulder. Yost sat up and opened her eyes. Carvalho then asked Yost to accompany her to Vorreyer's office. Carvalho advised Vorreyer that she had just observed Yost sleeping on the job again.

On November 16, 2007, Yost met with Vorreyer who informed her that two supervisors had observed Yost sleeping on the job earlier that day. Vorreyer told Yost that Carvalho also had observed Yost sleeping on the job that day. Vorreyer told Yost that she had been warned previously about

6

sleeping on the job.  At the meeting, Vorreyer told Yost that she had no choice but to terminate Yost's employment because Yost had slept on the job after having been previously warned not to do so again.  Yost's employment at Memorial terminated effective November 16, 2007.

(B)

Yost admits that she knows of no reason why Farley, Stone or Carvalho would speak falsely about her.  Memorial alleges that in the interrogatories issued to Yost, she was unable to point to any specific facts which she believed establish that Memorial demoted her due to her age. When asked to explain what she meant by stating that Vorreyer made her feel inadequate in her job "because she was older," Yost replied in part "it's a feeling you get.  It's not something that somebody specifically says to you."  Memorial further asserts that when asked to identify any person similarly situated to her who was not demoted in October 2007, Yost identified no one.

The same appears to be true regarding Yost's termination.  Yost stated that she believed her supervisor watched her very closely, "look[ed] for ways

to get rid of her" and wanted Yost to be terminated "because she was older and stuck in her old ways." Once again, Yost does not really offer any specifics. Moreover, Yost could not identify any similarly situated younger person who was not terminated by Memorial in November 2007. Memorial alleges that at the time of Yost's termination, the Call Center work force consisted of employees ranging in age from 21 to 68.

Memorial further asserts that Vorreyer discussed Yost's Performance Appraisal with her on September 25, 2007. Vorreyer recorded that at some point during the discussion, Yost asked whether her job was in jeopardy and whether she should resign. Vorreyer recorded that she responded that was not her decision; rather, it was Yost's decision.

## II. ANALYSIS

The entry of summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Rule 56(c) mandates

the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. If a defendant can show the absence of some fact that the plaintiff must prove at trial, then the plaintiff must produce evidence, and not merely restate his allegations, to show that a genuine issue exists. Sartor v. Spherion Corp., 388 F.3d 275, 278 (7th Cir. 2004). The Court construes all facts and makes all reasonable inferences in favor of the non-moving party. Magin v. Monsanto Co., 420 F.3d 679, 686 (7th Cir. 2005).

The ADEA prohibits an employer from discriminating against an employee based on her age. See Mach v. Will County Sheriff, 580 F.3d 495, 498 (7th Cir. 2009) (citing 29 U.S.C. § 623(a)(1)). An ADEA plaintiff must show that her age was the "but-for" cause of the challenged employment action. See Gross v. FBL Financial Services, Inc., __ U.S. __, 129 S. Ct. 2343, 2352 (2009).

Memorial notes that the allegations in the complaint show that Yost

purports to establish her claim pursuant to the so-called "indirect" method of proof.  In order to establish a prima facie case, Yost must prove that (1) she is a member of a protected class; (2) her job performance met Memorial's legitimate expectations; (3) she suffered an adverse employment action; and (4) Memorial treated similarly situated employees outside of the protected class more favorably.  See Faas v. Sears, Roebuck & Co., 532 F.3d 633, 641 (7th Cir. 2008).

The record establishes that Yost is unable to meet elements (2) and (4) of her prima facie case.  The Court has reviewed Memorial's factual allegations in support of its motion for summary judgment.  Those allegations are properly supported by discovery responses, affidavits or depositions.  Because Yost did not respond to Memorial's motion, the allegations are undisputed.  See C.D. Ill. R. 7.1(D)(2) ("A failure to respond shall be deemed an admission to the motion.").

Thus, Yost is unable to create a genuine issue of material fact.  Accordingly, Memorial has established that Yost's job performance did not meet its legitimate expectations.  Moreover, it did not treat employees under

10

the age of 40 more favorably.  Memorial is entitled to summary judgment on Yost's ADEA claims.  Count II of the Plaintiff's complaint, which asserts a claim under the Family and Medical Leave Act, was dismissed pursuant to the Plaintiff's motion.

Ergo, the Defendant's motion for summary judgment [d/e 18] is ALLOWED.

The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

ENTER: November 17, 2009

FOR THE COURT:

s/Richard Mills
United States District Judge